IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jordan Dixon, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>Sweepsteaks Limited, d/b/a/ Stake.us<br><br>Defendant. | C/A No. 3:25-cv-09641-SAL<br><br><br><br>**ORDER** |

Jordon Dixon brings this proposed class action against Sweepsteaks Limited ("Stake") for alleged violations of South Carolina Code § 12-21-2710. [ECF No. 1.] This matter is before the court on Stake's motion to stay and compel arbitration. [ECF No. 11.] For the reasons below, the court grants this motion.

## I.    Background

Stake operates Stake.us, a website it describes as providing "entertaining online social gaming." [ECF No. 11-1 at 5.] Patrons who log onto Stake's platform can play casino-style games, such as slots, poker, and roulette, through which they can win virtual currency. *See id.* This currency can then be exchanged for "real-world currency" and withdrawn from Stake's platform.

According to Dixon, Stake uses a dual-currency system to disguise real-money gambling as a social casino. [ECF No. 17 at 10.] He claims to have wagered and lost roughly $2,000 in real-world currency while playing Stake's games. *Id.* at 12. Dixon now argues Stake's platform violates South Carolina law and seeks recovery of those alleged losses on behalf of himself and others similarly situated. [ECF No. 1 ¶¶ 100–07.]

Stake asks the court to enforce the arbitration agreement contained in the terms and conditions (the "Terms and Conditions") governing use of its website. To enter Stake's platform,

1

a user must accept Stake's terms. [ECF No. 11-1 at 6.] Prospective users must scroll through all the Terms and Conditions and affirm that they "have read and agree to the terms and conditions." [ECF No. 11-3 at 2.] The Terms and Conditions contain an arbitration provision:

> [A]ny and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of [this agreement] as well as the decision of whether the Dispute should be arbitrated in the first place, shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA), the rules of which are deemed to be incorporated by reference into this clause.

[ECF No. 11-5 at 22.]

The agreement further provides that arbitration applies to:

> [A]ny and all past, present and future disputes, claims or causes of action between you and Stake or any of its affiliates . . . which arise out of or are related in any way to these Terms, the formation of these Terms, the validity or scope of this clause 26 (Dispute Resolution and Agreement to Arbitrate), your Participation in or other access to or use of the Games or the Platform, or any other dispute between you and Stake or any of its affiliates . . . including as to the arbitrability of any of the foregoing, and whether arising prior to or after your agreement to this clause[.]

[ECF No. 11-5 at 21.]

Dixon argues the Terms and Conditions are void, unconscionable, illusory, and unenforceable. [ECF No. 17.]

## II.     Legal Standard

The Federal Arbitration Act ("FAA") reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The FAA's policy of favoring arbitration augments ordinary rules of contract interpretation and requires all ambiguities to be resolved in favor of arbitration." *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 682–83 (4th Cir. 2020) (citations and internal quotation marks omitted).

The FAA dictates that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Grounds for revocation include "contractual formation defects such as lack of mutual assent and want of consideration," *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999), and "generally applicable contract defenses, such as . . . unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Where (1) a valid arbitration agreement exists and (2) the claims fall within the scope of the arbitration agreement, the court has "no choice but to grant a motion to compel arbitration." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002); *see also Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). The party resisting arbitration bears the burden of showing that the arbitration agreement is unenforceable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

### III.    Discussion

Before referring a dispute to arbitration, a district court must determine whether a valid arbitration agreement exists. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024). Arbitration agreements may include multiple levels of agreements concerning arbitration. Contracting parties can "agree to send the merits of a dispute to an arbitrator." *Id.* at 148. They can also "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)).

As the Supreme Court has explained, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'"

*Henry Schein, Inc.*, 586 U.S. at 67–68 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. When parties clearly delegate those issues to the arbitrator, courts must enforce that delegation. *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 130 F.4th 396, 402 (4th Cir. 2025), *cert. denied*, 146 S. Ct. 187 (2025). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein,* 586 U.S. at 68.

### A.  Illegality and Lack of Consideration

Dixon first argues that the Terms and Conditions are predicated on illegal gambling prohibited under South Carolina law. [ECF No. 17 at 15–17.] Specifically, he claims that the sole consideration supporting the agreement was the opportunity to participate in illegal gambling, rendering the arbitration provision unenforceable. *Id.*

To the extent Dixon challenges the validity of the Terms and Conditions as a whole, including the arbitration agreement generally, he presents an issue of validity, arbitrability, or enforceability that has been delegated to the arbitrator. *See* ECF No. 11-5 at 22 (noting "question[s] regarding the existence, validity, enforceability, of these [Terms and Conditions] . . . shall be referred to . . . arbitration . . ."); *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21 (2012) (per curiam) ("[I]t is a mainstay of the [FAA's] substantive law that attacks on the validity of [a] contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'" (quoting *Preston v. Ferrer*, 552 U.S. 346, 349 (2008))); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity

is considered by the arbitrator in the first instance."); *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020) ("When a litigant specifically challenges the enforceability of an arbitration agreement with a delegation clause, the challenge must be submitted to the arbitrator unless the plaintiff has lodged a specific objection to the delegation clause.").

To the extent Dixon specifically challenges the delegation clause, that argument also fails because the delegation clause is independently supported by valid consideration. Mutual promises to arbitrate and mutual promises to delegate certain issues to the arbitrator are adequate consideration under South Carolina law. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (applying South Carolina law); *Williams v. Oak St. Health MSO, LLC*, 819 F. Supp. 3d 468, 472 (D.S.C. 2025) (applying South Carolina law) ("[T]he plaintiff's and the defendant's mutual promise to arbitrate, itself, is sufficient consideration."); *Evatt v. Campbell*, 106 S.E.2d 447, 451 (S.C. 1959) ("[m]utual promises also constitute a good consideration"). Moreover, the Supreme Court has recognized that valid delegation clauses must be enforced regardless of whether the larger contract is allegedly void for illegality. *Buckeye Check Cashing, Inc.* 546 U.S. at 449 (holding that challenges to the legality of a contract as a whole, and not specifically to the arbitration agreement, must go to the arbitrator); *M.M. v. VGW US, Inc.*, No. 25-cv-10514-DJC, 2026 WL 34452, at *6 (D. Mass. Jan. 6, 2026) (finding delegation clause supported by valid consideration separate and apart from remainder of contract alleged to be premised on illegal consideration); *Huynh v. Boom Shakalaka, Inc.*, 814 F. Supp. 3d 1141, 1148 (C.D. Cal. 2026). Accordingly, the court declines to find the arbitration clause fails for lack of consideration. *Hall v.*

*Sweepsteakes Ltd.*, No. 3:25-CV-345-RAH, 2026 WL 701560, at \*4 (M.D. Ala. Mar. 12, 2026) (rejecting the argument that Stake's terms and conditions are void due to illegal consideration).[1]

### B. Unconscionability

Dixon next argues that the Terms and Conditions are unconscionable and thus unenforceable. [ECF No. 17 at 25–32.] The court again disagrees.

A court may invalidate an arbitration agreement based on defenses applicable to contracts generally, including unconscionability. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017). In analyzing claims of unconscionability in the context of arbitration agreements, the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is structured to provide a fair and unbiased decision before a neutral decision-maker. *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938–40 (4th Cir. 1999); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) (advising that a court may find an arbitration agreement unconscionable in "limited circumstances").

To prove the arbitration provision unconscionable, a plaintiff must show that (1) he lacked a meaningful choice as to whether to arbitrate because the arbitration agreement's provisions were one sided, and (2) the terms were so oppressive no reasonable person would make them and no fair and honest person would accept them. *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668 (S.C. 2007); *see also Damico v. Lennar Carolinas, LLC*, 879 S.E.2d 746, 754 (S.C. 2022)

---

[1] Dixon relies in part on *Macon Cnty. Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152 (Ala. 2016), but the court finds that case distinguishable for several reasons—first being that it is merely a persuasive authority. Second, *Macon* involved an arbitration agreement where a player agreed to arbitrate all claims "[a]s a condition of participating in any bingo game," thus tying the arbitration agreement specifically to gambling as opposed to merely entering a platform. *Id.* at 155. Third, at least one other court has found *Macon* distinguishable where separate consideration exists for an arbitration agreement, even in the context of Stake's terms and conditions. *Hall*, 2026 WL 701560, at \*4.

(characterizing these two prongs as procedural and substantive unconscionability, respectively). "In South Carolina, unconscionability is 'due to both an absence of meaningful choice and oppressive, one-sided terms.'" *Synovus Bank v. Stevens L. Firm*, 2020 WL 12788154, at *2 n.3 (D.S.C. July 20, 2020) (quoting *York v. Dodgeland of Columbia, Inc.*, 749 S.E.2d 139, 148 (S.C. Ct. App. 2013)).

For procedural unconscionability, courts consider whether an absence of meaningful choice taints an arbitration contract, including "the relative disparity in the parties' bargaining power, the parties' relative sophistication, and whether the plaintiffs are a substantial business concern of the defendant." *Damico*, 879 S.E.2d at 755. "Inequality of bargaining power alone will not invalidate an arbitration agreement." *Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 365 n.5 (S.C. 2001) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)).

The court finds that the Terms and Conditions are not procedurally unconscionable. Dixon argues that the arbitration provision is "buried deep within a lengthy, single-spaced, boilerplate agreement." [ECF No. 17 at 27.] But, as Stake correctly notes, a warning about the contract's arbitration provision is outlined, in bold capital letters, in the agreement's first paragraph. [ECF No. 11-5 at 2.] And, while Dixon argues the Terms and Conditions are "imposed on consumers on a take-it-or-leave-it" basis, an adhesion contract is not per se unconscionable. *Thomerson v. Covercraft Indus., LLC*, No. 2:23-CV-02225-DCN, 2024 WL 1251532, at *14 (D.S.C. Mar. 25, 2024); *Damico*, 879 S.E.2d at 756 ("Adhesive contracts are not unconscionable in and of themselves so long as the terms are even-handed."). Further, the Terms and Conditions mandate a neutral arbitrator and even permitted Dixon to opt out of the arbitration provision by sending written notice to Stake within thirty days of creating his account. [ECF No. 11-5 at 22–23.] Accordingly, the court declines to find the Terms and Conditions procedurally unconscionable.

And because the arbitration provision is not procedurally unconscionable, the court need not reach the question of substantive unconscionability. *Varon v. Uber Techs., Inc.*, No. CV MJG-15-3650, 2016 WL 3917213, at *2 (D. Md. July 20, 2016); *Thomas v. Matrix Sys. Auto. Finishes, LLC*, No. CIV.A.6:09-2169HFF, 2010 WL 147956, at *6 (D.S.C. Jan. 14, 2010); *Rockwell Mining, LLC v. Pocahontas Land LLC*, 726 F. Supp. 3d 567, 589 (S.D.W. Va. 2024), *aff'd*, No. 24-2051, 2025 WL 3496971 (4th Cir. Dec. 5, 2025).

Finally, Dixon argues the arbitration agreement is illusory because Stake maintains a unilateral right to modify the contract at any time. [ECF No. 17 at 22–25.] That said, a unilateral modification right does not automatically render a contract illusory. *Finch v. Lowe's Home Centers, LLC*, No. 3:20-CV-02981-JMC, 2021 WL 2982863, at *5 (D.S.C. July 15, 2021). Nor does Dixon identify any modification to the contract which harmed him. *See id.* ("The court finds that Plaintiff's argument . . . based solely on a hypothetical modification, is not enough to overcome his burden to prove that the modifications clause . . . amounts to contract terms so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other."). The record also reflects that when the Terms and Conditions were updated on August 12, 2025, Dixon accepted these changes the same day. [ECF No. 11-4 at 2.] And even assuming the modification provision was problematic, it could be severed from the remainder of the agreement to avoid invalidating it in its entirety. *Payne v. Amazon.com, Inc.*, No. 2:17-CV-2313-PMD, 2018 WL 4489275, at *7 (D.S.C. July 25, 2018); *Doe v. TCSC, LLC*, 846 S.E.2d 874, 880–81 (S.C. Ct. App. 2020). Thus, the court finds Dixon's remaining arguments unpersuasive.

## IV.    Conclusion

For the above reasons, Stake's motion to compel arbitration and stay proceedings, ECF No. 11, is **granted**. The parties are compelled to arbitration under the arbitration agreement contained in the Terms and Conditions outlined in ECF No. 11-5. This matter is **stayed** pending the conclusion of arbitration. The parties are directed to file a status report concerning the status of arbitration within ninety days of this order and shall file updated reports every ninety days thereafter.

**IT IS SO ORDERED.**

May 27, 2026                                         Sherri A. Lydon
Columbia, South Carolina                            United States District Judge

9